1  WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9  Anthony Joseph Amara,                    No.  CV 14-8103-PCT-SMM (JFM)

10                      Plaintiff,

11       v.                                          **O R D E R**

12  Navajo County Jail, et al.,

13

14                      Defendants.

15

16         On June 23, 2014, Plaintiff Anthony Joseph Amara, who is now confined in the

17  Arizona State Prison Complex-Lewis in Buckeye, Arizona, filed a *pro se* civil rights

18  Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma*

19  *Pauperis*.  In a July 25, 2014 Order, the Court granted the Application to Proceed and

20  dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave

21  Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the

22  Order.

23         On August 18, 2014, Plaintiff filed a First Amended Complaint.  In a November

24  21, 2014 Order, the Court dismissed the First Amended Complaint because Plaintiff had

25  failed to state a claim.  The Court gave Plaintiff 30 days to file a second amended

26  complaint that cured the deficiencies identified in the Order.  Plaintiff failed to respond,

27  and, on January 7, 2015, the Clerk of Court administratively closed the case for failure to

28  prosecute, and entered judgment accordingly.

**TEMPSREF**

1    Subsequently, Plaintiff moved to reopen the matter, explaining that he had filed a

2    Motion for Extension of Time to amend his complaint, that the Court had not yet ruled on

3    the Motion, and that the case had been closed while he awaited the Court's ruling on the

4    Motion.  Though no such motion had been received by the Court at the time the case was

5    closed,[1] the Court, out of an abundance of caution, reopened the case by Order dated

6    January 23, 2015, and provided Plaintiff with 30 days in which to amend his complaint to

7    cure the deficiencies identified in the November 21 Order.

8        On February 20, 2015, Plaintiff filed a Second Amended Complaint (Doc. 16).[2]

9    The Court will order Defendants Clark and Garcia to answer the Second Amended

10   Complaint, and will dismiss the remaining Defendants without prejudice.

11   **I.    Statutory Screening of Prisoner Complaints**

12       The Court is required to screen complaints brought by prisoners seeking relief

13   against a governmental entity or an officer or an employee of a governmental entity.  28

14   U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff

15   has raised claims that are legally frivolous or malicious, that fail to state a claim upon

16   which relief may be granted, or that seek monetary relief from a defendant who is

17   immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

18       A pleading must contain a "short and plain statement of the claim *showing* that the

19   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8

20   does not demand detailed factual allegations, "it demands more than an unadorned, the-

21   defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

22   (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

23   conclusory statements, do not suffice."  *Id.*

---

25   [1] The Motion was eventually received by the Court on March 30, 2015, apparently
     due to a mailing error.  Because Plaintiff has now filed his Second Amended Complaint,
26   the Motion will be denied as moot.

27   [2] Plaintiff entitled this filing the "Third Amended Complaint," and the Clerk of
     Court has docketed it as such.  Upon review, however, it appears that this designation is
28   in error.  While the filing is, strictly speaking, the *third* Complaint Plaintiff has filed, it is
     the second *amended* Complaint he has filed.  Accordingly, the Court will refer to the
     filing as the *Second* Amended Complaint within this Order.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.     Second Amended Complaint

In his single-count Second Amended Complaint, Plaintiff names as Defendants: Kelly Clark, the Navajo County Sheriff; Brad Carlyon, the Navajo County Attorney; Ernie Garcia, the Navajo County Jail Commander; and Judge Higgins, a Judge on the Navajo County Superior Court. Plaintiff seeks monetary relief and punitive damages.

Plaintiff frames his claim as one for inadequate medical care, in violation of the Fourteenth Amendment. According to Plaintiff, he was arrested on August 21, 2013. During his initial intake into the Navajo County Jail (the "jail"), he informed the "officers, jailers, and medical staff" that he had a broken jaw with a metal plate that had shifted, causing him severe pain; Plaintiff was scheduled for surgery to have his jaw repaired at the time he was arrested.

On September 1, 2013, Plaintiff used the medical kiosk system at the jail to request to be seen for his broken jaw, and complained that he was in pain. On September

4, 2013, Plaintiff again used the medical kiosk system to be seen for his jaw and associated pain.  On September 5, Plaintiff was seen by Richard Dawson, a doctor with the Navajo County Healthcare system ("Dr. Dawson").  Dr. Dawson assessed that the metal plate in Plaintiff's jaw appeared to have a piece that was embedded improperly, and was protruding.  Dr. Dawson requested Plaintiff's medical records, informed Plaintiff that he would reassess Plaintiff's situation once he had received the records, and started Plaintiff on pain medications.  That same day, Plaintiff's medical records were faxed to the jail.

On September 17, and again on September 22, having received no follow-up, Plaintiff again requested to have his jaw repaired; he received no response to either request.  On September 24, Plaintiff initiated a detainee grievance to have surgery on his jaw.

Meanwhile, on September 25, Plaintiff again requested to be seen by medical for pain in his jaw.  The next day, Plaintiff was seen by Robert Dawson, a physician's assistant with the jail ("PA Dawson").  PA Dawson increased Plaintiff's pain medications and concluded that Plaintiff's jaw had shifted and that he needed maxillofacial surgery.  PA Dawson apparently made an appointment with the dental department for an evaluation and a referral to an oral surgeon.

On October 24, 2013, Plaintiff was seen by Dr. Clarence Hansen, D.D.S.  Dr. Hansen concluded that Plaintiff's jaw had healed out of alignment, and recommended that the jaw be re-broken and properly aligned, and that the metal plates be repaired to correct a protrusion along the jaw line.

On October 30, 2013, having yet to receive surgery, Plaintiff initiated a second detainee grievance to have surgery to repair his jaw and alleviate his pain.  The next day, Defendant Garcia denied Plaintiff's *first* grievance.  However, as to Plaintiff's *second* grievance request, Plaintiff alleges that Defendant Clark became aware of Plaintiff's medical needs because Clark "is notified of all medical grievance[s]."  Additionally, Clark was forwarded all medical records concerning Plaintiff's condition.  However,

"medical staff" denied the grievance on November 4, 2013, stating that Plaintiff "would have to have surgery on his own."  On November 7, Lieutenant Davis issued a follow-up to the denial, stating that there was "no need for additional medical resources."  Finally, on November 14, Defendant Garcia issued a follow-up to the denial, stating there would be "no treatment for [Plaintiff's] broken jaw."  Plaintiff alleges that Defendant Clark was notified of Plaintiff's condition and request for surgery.

Meanwhile, on October 31, Plaintiff was again seen by PA Dawson for increased pain in his jaw.  PA Dawson suggested that Plaintiff coordinate with his criminal defense attorney to seek a medical furlough because Defendant Clark "would not authorize the surgery at county expense."  That same day, Plaintiff's criminal defense attorney initiated furlough procedures by having Plaintiff sign a medical release.

On December 2, 2013, still having not received surgery, Plaintiff requested assistance from Lieutenant Davis.  Davis "admitted [a] change in [Plaintiff's] medical condition and that Plaintiff was in pain," but only suggested that Plaintiff follow-up with his criminal defense attorney about a medical furlough.  That same day, Plaintiff initiated a third detainee grievance requesting treatment for his broken jaw and associated pain.  "Medical staff" responded that they would "review Plaintiff in 30 days."  Nevertheless, "per Defendant Clark's order," Defendant Garcia denied Plaintiff's grievance.

On December 10, and again on December 19, Plaintiff informed the medical department of increased pain in his jaw; Plaintiff does not indicate whether the medical department responded or otherwise addressed his pain.  On January 7, 2014, Plaintiff's attorney filed a motion for medical furlough in the Navajo County Superior Court with Defendant Higgins.  The motion "completely explained Plaintiff's medical issues[,] the efforts Plaintiff had taken to resolve the medical issue[s] with the county jail," and sought a 10 hour furlough, at Plaintiff's own expense, to have surgery on his jaw.  A copy of the motion was provided to Defendants Clark, Garcia, and Carlyon.

After a hearing on January 13, 2014, at which medical records, referrals, diagnoses, evaluations, and pictures of Plaintiff's broken jaw were presented, Defendant

1    Higgins denied the motion.  On January 16, Plaintiff was seen by Dr. Jason Lyman,

2    D.M.D.  Dr. Lyman recommended that the metal plates in Plaintiff's jaw be immediately

3    removed, and referred Plaintiff to Dr. Todd Dingman for further evaluation.  Defendants

4    Clark and Garcia were notified of Dr. Lyman's evaluation.

5           On February 3, 2014, Plaintiff's criminal defense attorney filed a motion to

6    continue Plaintiff's sentencing.  The motion sought to delay sentencing because Plaintiff

7    was continuing to seek treatment for his jaw, and that transfer to the Arizona Department

8    of Corrections ("ADOC") *prior* to treatment would only further delay treatment and

9    subject Plaintiff to additional pain and suffering.  The motion was supplemented with

10   medical evaluations and photographs.   In response, Defendant Carlyon sought to

11   *accelerate* sentencing because "[Plaintiff's] motivation for seeking treatment was only to

12   cause the taxpayers more money because [Plaintiff is] a thief."

13          Meanwhile, Plaintiff was seen by Dr. Dingman, a maxillofacial surgeon, on

14   February 6, 2014.  Dr. Dingman recommended that the metal plates in Plaintiff's jaw be

15   immediately removed and the jaw repaired.  Defendants Clark and Garcia were provided

16   copies of Dr. Dingman's evaluation.

17          On February 27, 2014, still having not received surgery, Plaintiff initiated a fourth

18   detainee grievance.  Medical staff responded that, on February 18, 2014, Defendant Clark

19   had ordered that Plaintiff be denied treatment and surgery, and, accordingly, denied the

20   grievance.

21          On March 6, Plaintiff's criminal defense attorney again sought to continue

22   sentencing, and also filed a motion to compel the Navajo County Sheriff's Office to

23   medically treat Plaintiff.  Defendants Clark, Garcia, Carlyon, and Higgins were provided

24   copies of the motion.  On March 12, Plaintiff's attorney sent a letter to Defendants Garcia

25   and Clark, notifying them that Plaintiff's constitutional right to medical care was being

26   violated and demanding that they immediately rectify the situation.  A copy of the letter

27   was also faxed to Defendant Higgins and the Navajo County Attorney's Office.

28   . . . .

1    Plaintiff was sentenced on March 18, 2014, and, having yet to receive treatment,

2    was transferred to ADOC custody on March 21, 2014.

3    **III.    Failure to State a Claim**

4    **A.    Defendant Higgins**

5    Defendant Higgins appears to be the Navajo County Superior Court Judge

6    assigned to Plaintiff's underlying criminal proceeding.  Judges are absolutely immune

7    from § 1983 suits for damages for their judicial acts except when they are taken "in the

8    clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978);

9    *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).  An act is "judicial" when it is a

10   function normally performed by a judge and the parties dealt with the judge in his or her

11   judicial capacity.  *Stump*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th

12   Cir. 1990).

13   This immunity attaches even if the judge is accused of acting maliciously and

14   corruptly, *Peirson v. Ray*, 386 U.S. 547, 553-54 (1967), or of making grave errors of law

15   or procedure.  *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988); *see also*

16   *Ammons v. Baldwin*, 705 F.2d 1445, 1446-48 (11th Cir. 1983) (judge entitled to

17   immunity from a claim that he verbally abused and humiliated plaintiff); *Tanner v. Heise*,

18   879 F.2d 572, 577-78 (9th Cir. 1989).

19   As it appears from Plaintiff's allegations that Defendant Higgins's only

20   participation in this matter was in ruling on Plaintiff's Motion for Medical Furlough and

21   other related acts associated with Plaintiff's underlying criminal proceeding.  Because

22   such action appears to fall within his "judicial capacity," Defendant Higgins is absolutely

23   immune from this suit, and will thus be dismissed.

24   **B.    Defendant Carlyon**

25   Defendant Carlyon appears to be the County Attorney responsible for prosecuting

26   Plaintiff in his underlying criminal proceeding.  As such, and similar to Defendant

27   Higgins, prosecutors are absolutely immune from liability for damages under § 1983 for

28   their conduct in "initiating a prosecution and in presenting the State's case" insofar as

that conduct is "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).  Indeed, this immunity extends to prosecutors even for "eliciting false or defamatory testimony from witnesses" or for making false or defamatory statements during, and related to judicial proceedings."  *Buckley*, 509 U.S. at 270 (citations omitted).  This immunity also includes liability for suppression of evidence *at trial*.  *Paine v. City of Lompoc*, 265 F.3d 975, 982, (9th Cir. 2001).  Furthermore, it is well established that a prosecutor's absolute immunity cannot be overcome by pleading conspiracy.  *See Imbler*, 424 U.S. at 430-31; *Ashelman*, 793 F.2d at 1078.

While prosecutors are not immune for actions involving the fabrication of evidence as part of the pre-prosecution investigation, *Paine*, 265 F.3d at 982 (citing *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001)), Plaintiff has made no such allegations here.  Based on the allegations presented, it appears that Defendant Carlyon's only participation in this matter was in opposing Plaintiff's medical furlough, seeking to accelerate Plaintiff's sentencing, and otherwise prosecuting Plaintiff in his underlying criminal proceeding.  Because such actions, as alleged, appear to fall within the realm of a prosecutor's duties in "initiating a prosecution and in presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process," *Buckley*, 509 U.S. at 270, Defendant Carlyon is absolutely immune from this suit, and will thus be dismissed.

## IV.     Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has sufficiently stated a claim for constitutionally inadequate medical care under the Fourteenth Amendment against Defendants Clark and Garcia, and they will be required to answer the Second Amended Complaint.

## V.     Warnings

### A.     Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court

that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed *in forma pauperis*.  Failure to comply may result in dismissal of this action.

**B.     Address Changes**

If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.     Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Motion for Extension of Time (Doc. 17) is **denied** as moot.

(2)     Defendants Higgins and Carlyon are **dismissed** without prejudice.

(3)     Defendants Clark and Garcia must answer the Second Amended Complaint.

(4)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request

for Waiver of Service of Summons form for Defendants Clark and Garcia.

(5)   Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)   If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)   The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8)   The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a)   personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if

required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9)     **A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10)    Defendants Clark and Garcia must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 1st day of May, 2015.


Honorable Stephen M. McNamee
Senior United States District Judge